UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PEDRO CRUZ-PEÑA, on behalf of himself, individually, and on behalf of all others similarly situated,

          Plaintiff,

-against-

GREAT KITCHEN SUPPORT CORP., and CHRISTIAN DIAZ, individually,

          Defendants.

24 CV 6263 (PKC) (RML)

### DECLARATION OF PEDRO CRUZ-PENA
### IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, DISCLOSURE OF CONTACT INFORMATION, LEAVE TO DISTRIBUTE NOTICE, AND EQUITABLE TOLLING
### PURSUANT TO 29 U.S.C. § 216(b)

Pursuant to 28 U.S.C. § 1746, I, Pedro Cruz-Pena, declare under penalty of perjury as follows:

1. I am the named Plaintiff in the above-captioned matter against my former employers, Defendants Great Kitchen Support Corp. and Cristian Diaz, individually (together, where appropriate, as "Defendants").

2. I worked for Defendants – a New York corporation that operates a Brooklyn-based catering company and its Chief Executive Officer who was the day-to-day overseer of the operations and my direct supervisor – as a Cook or Kitchen Assistant from June 2021 until December 2022, at two of Defendants' kitchen, warehouse, and packaging facilities located at 2779 Stillwell Avenue in Brooklyn, New York, and 147 41st Street in Brooklyn, New York.

3. At Cristian Diaz's instruction, I also worked at catering events held by other companies who were associates or clients of Defendants, or held at venues by Defendants' clients,

1

or I went to locations to pick up or drop off other employees working at such locations. These locations included Union Square Events located at 68 35th Street in Brooklyn, New York, and Riviera Caterers located at 2780 Stillwell Avenue in Brooklyn, New York. These events included events hosted by airlines, museums, and other large companies and organizations. There were many other addresses where I worked, or where I delivered food, including 152 41st Street in Brooklyn, New York; Frank's Wine Bar, 465 Court Street in Brooklyn, New York; 6620 Bay Parkway in Brooklyn, New York; 577 4th Avenue in Brooklyn, New York; 5303 4th Avenue in Brooklyn, New York; 508 Canal Street in New York, New York; 597 Marin Blvd. in Jersey City, New Jersey; 634 Pine Hill Road in Chester, New York; and Snug Harbor Cultural Center and Botanical Garden, 1000 Richmond Terrace in Staten Island, New York. In his text messages, Cristian often gave me a name and a phone number of a person to coordinate with at the destination address.

4. I never received any employment contract or offer letter from Defendants, or any other written notice stating my pay. I was paid by check once each week by Cristian Diaz. However, it was not a payroll check, and I never received a wage statement a W-2, or a 1099. No taxes were withheld from my pay, and I never received any health care benefits. Nevertheless, in 2024, the Internal Revenue Service sent me a notification that I owed thousands of dollars in taxes because Defendants suddenly reported non-employee compensation for me for the year 2022.

5. The amounts paid to me each week varied, and I don't know why – the amounts did not correspond to the number of hours I worked. For example, I have checks showing I was paid $1,155 for 77 hours worked in a week, $840 with no notation of hours, $990 for 66 hours, $661 for 44 hours, $657 for 43.8 hours, $762 for 50.8 hours, and so forth. The listed hours did not match what I worked. The checks suggest that the pay was calculated at minimum wage of $15 per hour worked, with no overtime pay for hours over 40 worked in a week. However, that is also

2

incorrect, because Defendants recorded a smaller number of hours on these checks than the number of hours I actually worked in those weeks. I remember repeatedly noticing that I worked more hours than the total number of hours shown on my check. I complained about this to Cristian Diaz on at least two occasions; he refused to listen or explain or take any action to correct the underpayment; so I eventually gave up on this because I needed the job and did not want to risk angering him and getting fired.

6. I communicated with Cristian Diaz and a couple of other supervisors whose first names were Edward and Enrique by text messages and WhatsApp messages on my phone. Messaging was our sole method of communication. Generally, Cristian told me in his text messages where to go and what hours to work. His text messages also told me what type of uniform to wear, depending on the event scheduled for that day, although Defendants never provided any assistance with purchasing or maintaining uniforms.

7. My main duties included heating up pre-cooked food, chopping vegetables, assembling dishes to be cooked, and packing cooked foods for delivery to customers. When I worked at catered buffet events, I unwrapped the food, placed it out for buffet service, replenished it when needed during the event, and cleaned up after the event. When I worked at catered waiter-service events, I prepared ordered items in the kitchen for the waiters to pick up.

8. I first worked for about half a year out of the Stillwell Avenue kitchen location. At that location, I generally worked six or seven days each week, from 8:00 a.m. until 9:00 p.m. Then, beginning in November 2021, I worked out of the 41st Street and then the 35th Street kitchen locations, where I worked generally seven days each week, from 8:30 a.m. until 7:00 or 8:00 p.m. I usually was able to take a one-half hour break during the work shift.

9. At the Stillwell Avenue location, the supervisors had a notebook where they recorded the hours worked by each employee, and I sometimes signed the book when I arrived to

work and when I left. At the 41st Street and 35th Street locations, Defendants began using an electronic timekeeping system – a tablet where I signed in and out – but the tablet did not work consistently.

10. I personally worked with and observed at least fifteen other non-managerial employees, including: Juan, Gloria, Tito, Laura, El Gordo, Alex, Jorge, Mateo, Patricio, Venansio, Miguel, as well as the opt-in plaintiffs in this case Dianelba Suriel and Amalia Godinez. I don't know the last names of these former coworkers other than the two opt-in plaintiffs.

11. Like me, all of these employees worked both in the kitchens and at events. Although some employees spent more time in the kitchens, and others spebnt more time working at events, our job duties were the same. We spoke of ourselves as Cooks or Kitchen Assistants, but there was no real difference among us.

12. The other employees worked similar schedules and hours as I did, although they had different assignments and reporting locations, as well as start times and end times.

13. I know there were additional employees whose first and last names I do not know, who worked on the same shifts with me, or at different times and locations – I think there were between 25 and 100 employees, but I'm not sure.

14. I also had conversations with several of these individuals about our work, pay, and hours, and they explained to me that they were also paid a varying amount each week that did not correspond to the number of hours they worked, and that did not add up to minimum wage, let alone overtime. They also, like me, received notifications from the Internal Revenue Service in 2024 that Defendants suddenly reported non-employee compensation, and as a result, they owed the IRS thousands of dollars.

15. Many of the employees I worked with spoke, like me, only Spanish.

16. This Declaration was read to me in Spanish, and I finalized the Declaration with the assistance of a bilingual speaker.

17. I declare under penalty of perjury that the foregoing is true and correct. Executed in Brooklyn, New York, on this 19 day of February 2025.

_____
Pedro A Cruz peña (Feb 19, 2025 16:40 EST)
PEDRO CRUZ-PENA