TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO ESTE DE NUEVA YORK

PEDRO CRUZ-PEÑA, en nombre propio, individualmente, y en nombre de todos los demás en situación similar,

Demandante,

-contra-

GREAT KITCHEN SUPPORT CORP., y CHRISTIAN DIAZ, individualmente,

Demandados.

24 CV 6263 (PKC) (RML)

DECLARACIÓN DE PEDRO CRUZ-PENA
EN APOYO A LA MOCIÓN DEL DEMANDANTE PARA LA CERTIFICACIÓN CONDICIONAL, LA DIVULGACIÓN DE LA INFORMACIÓN DE CONTACTO, LA AUTORIZACIÓN PARA DISTRIBUIR EL AVISO Y LA SUSPENSIÓN EQUITATIVA DE CONFORMIDAD CON EL TÍTULO 29 DEL CÓDIGO DE LOS EE. UU. § 216(b)

De conformidad con el Título 28 del Código de los EE. UU. § 1746, yo, Pedro Cruz-Pena, declaro bajo pena de perjurio lo siguiente:

1. Soy el demandante nombrado en el asunto mencionado anteriormente contra mis antiguos empleadores, los demandados Great Kitchen Support Corp. y Cristian Díaz, individualmente (en conjunto, cuando corresponda, como los "Demandados").

2. Trabajé para los Demandados (una corporación de Nueva York que opera una empresa de catering con sede en Brooklyn y su Director Ejecutivo, que era el supervisor diario de las operaciones y mi supervisor directo) como Cocinero o Asistente de Cocina desde junio de 2021 hasta diciembre de 2022, en dos de las instalaciones de cocina, almacén y empaquetado de los Demandados ubicadas en 2779 Stillwell Avenue en Brooklyn, Nueva York, y 147 41st Street en Brooklyn, Nueva York.

3. Por instrucción de Cristian Díaz, también trabajé en eventos de catering organizados por otras empresas que eran asociadas o clientes de los Demandados, o situados en lugares por clientes de los Demandados, o fui a lugares para recoger o dejar a otros empleados que trabajaban en dichos lugares. Estos lugares incluían Union Square Events ubicado en 68 35th Street en Brooklyn, Nueva York, y Riviera Caterers ubicado en 2780 Stillwell Avenue en Brooklyn, Nueva York. Estos eventos incluían

1

eventos organizados por aerolíneas, museos y otras grandes empresas y organizaciones. Había muchas otras direcciones donde trabajaba o donde entregaba comida, incluyendo 152 41st Street en Brooklyn, Nueva York; Frank's Wine Bar, 465 Court Street en Brooklyn, Nueva York; 6620 Bay Parkway en Brooklyn, Nueva York; 577 4th Avenue en Brooklyn, Nueva York; 5303 4th Avenue en Brooklyn, Nueva York; 508 Canal Street en Nueva York, Nueva York; 597 Marin Blvd. en Jersey City, Nueva Jersey; 634 Pine Hill Road en Chester, Nueva York; y Snug Harbor Cultural Center and Botanical Garden, 1000 Richmond Terrace en Staten Island, Nueva York. En sus mensajes de texto, Cristian a menudo me daba un nombre y un número de teléfono de una persona con la que coordinar en la dirección de destino.

4. Nunca recibí ningún contrato de trabajo ni carta de oferta de los Demandados, ni ningún otro aviso escrito que indicara mi salario. Cristian Díaz me pagaba con cheque una vez por semana. Sin embargo, no era un cheque de nómina y nunca recibí un recibo de sueldo, ni un W-2 ni un 1099. No se retuvieron impuestos de mi salario y nunca recibí ningún beneficio de atención médica. Sin embargo, en 2024, el Servicio de Impuestos Internos me envió una notificación de que debía miles de dólares en impuestos porque los Demandados repentinamente informaron una compensación por no ser empleado para mí para el año 2022.

5. Los montos que me pagaban cada semana variaban y no sé por qué: los montos no se correspondían con la cantidad de horas que trabajaba. Por ejemplo, tengo cheques que muestran que me pagaron $1,155 por 77 horas trabajadas en una semana, $840 sin anotación de horas, $990 por 66 horas, $661 por 44 horas, $657 por 43.8 horas, $762 por 50.8 horas, y así sucesivamente. Las horas enumeradas no coincidían con lo que trabajé. Los cheques sugieren que el pago se calculó con un salario mínimo de $15 por hora trabajada, sin pago de horas extra por las horas que superaran las 40 trabajadas en una semana. Sin embargo, eso también es incorrecto, porque los Demandados registraron una cantidad menor de horas en estos cheques que la cantidad de horas que realmente trabajé en esas semanas. Recuerdo haber notado repetidamente que trabajé más horas que la cantidad total de horas que se mostraba en mi cheque. Me quejé de esto con Cristian Díaz en al menos dos ocasiones; se negó a escuchar, explicar o tomar alguna medida para corregir el pago insuficiente; así que finalmente me di por vencido porque necesitaba el trabajo y no quería correr el riesgo de enojarlo y que me despidieran.

6. Me comuniqué con Cristian Díaz y un par de supervisores más cuyos nombres de pila eran Edward y Enrique por mensajes de texto y mensajes de WhatsApp en mi teléfono. La mensajería era nuestro único método de comunicación. Generalmente, Cristian me decía en sus mensajes de texto a

2

dónde ir y a qué horas trabajar. Sus mensajes de texto también me indicaban qué tipo de uniforme debía usar, según el evento programado para ese día, aunque los Demandados nunca brindaron ninguna ayuda para comprar o mantener los uniformes.

7. Mis principales tareas incluían calentar alimentos precocinados, cortar verduras, armar platos para cocinar y empacar alimentos cocinados para entregar a los clientes. Cuando trabajaba en eventos de buffet con servicio de catering, desempacaba la comida, la colocaba para el servicio de buffet, la reponía cuando era necesario durante el evento y limpiaba después del evento. Cuando trabajaba en eventos de servicio de camareros con servicio de catering, preparaba los artículos pedidos en la cocina para que los camareros los recogieran.

8. Primero trabajé durante aproximadamente medio año en la instalación de la cocina de Stillwell Avenue. En ese lugar, generalmente trabajaba seis o siete días a la semana, desde las 8:00 a. m. hasta las 9:00 p. m. Luego, a partir de noviembre de 2021, trabajé en las cocinas de la calle 41 y luego en la de la calle 35, donde trabajaba generalmente siete días a la semana, desde las 8:30 a. m. hasta las 7:00 u 8:00 p. m. Por lo general, podía tomar un descanso de media hora durante el turno de trabajo.

9. En la instalación de Stillwell Avenue, los supervisores tenían un cuaderno donde registraban las horas trabajadas por cada empleado, y a veces firmaba el libro cuando llegaba al trabajo y cuando me iba. En las instalaciónes de la calle 41 y la calle 35, los Demandados comenzaron a usar un sistema de control de tiempo electrónico (una tableta donde registraba la entrada y la salida), pero la tableta no funcionaba de manera constante.

10. Yo personalmente trabajé con y observé al menos a otros quince empleados no gerenciales, entre ellos: Juan, Gloria, Tito, Laura, El Gordo, Alex, Jorge, Mateo, Patricio, Venansio, Miguel, así como las demandantes opt-in en este caso Dianelba Suriel y Amalia Godinez. No sé los apellidos de estos ex compañeros de trabajo, excepto los de las dos demandantes opt-in.

11. Al igual que yo, todos estos empleados trabajaban tanto en las cocinas como en eventos. Aunque algunos empleados pasaban más tiempo en las cocinas y otros más tiempo trabajando en eventos, nuestras tareas laborales eran las mismas. Nos definíamos como cocineros o asistentes de cocina, pero no había una diferencia real entre nosotros.

12. Los otros empleados trabajaban horarios y horas similares a los míos, aunque tenían diferentes asignaciones y lugares donde presentarse así como horas de inicio y de finalización.

13. Sé que había empleados adicionales cuyos nombres y apellidos no recuerdo, que trabajaban en los mismos turnos que yo, o en diferentes horarios y lugares; creo que había entre 25 y 100 empleados, pero no estoy seguro.

14. También tuve conversaciones con varias de estas personas sobre nuestro trabajo, salario y horas, y me explicaron que también se les pagaba una cantidad variable cada semana que no se correspondía con la cantidad de horas que trabajaban y que no sumaba el salario mínimo, y mucho menos las horas extras. También, como yo, recibieron notificaciones del Servicio de Impuestos Internos en 2024 de que los Demandados repentinamente informaron una compensación para no empleados y, como resultado, le debían al IRS miles de dólares.

15. Muchos de los empleados con los que trabajé hablaban, como yo, solo español.

16. Esta Declaración me fue leída en español y la finalicé con la ayuda de un hablante bilingüe.

17. Declaro bajo pena de perjurio que lo anterior es verdadero y correcto.
Ejecutado en Brooklyn, Nueva York, el día ___ de febrero de 2025.

PEDRO CRUZ-PENA

_____
Pedro A Cruz pena (Mar 25, 2025 06:30 EDT)

## VERIFICATION

I, Andrew Rona, hereby certify that I translated the attached document called

"Plaintiff Cruz-Pena Declaration" on 5 pages

from English into Spanish and that, to the best of my ability, it is a true and correct translation.
I further declare that I am certified by the Supreme Court of the State of New York and am competent in both languages Spanish and English to render and certify such translation.

_____ 3/11/21
Andrew Rona    Date

_____
Notary Public


_____
PEDRO CRUZ-PENA

"

# DECLARACIÓN DE PEDRO CRUZ-PENA _Spanish

Final Audit Report 2025-03-25

| | |
|---|---|
| Created: | 2025-03-24 |
| By: | Carola Delgado (cid@employmentlawyernewyork.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAjQw9BlrvTzLJr38fOMUHDbBSwJZXdngo |

## "DECLARACIÓN DE PEDRO CRUZ-PENA _Spanish" History

- Document created by Carola Delgado (cid@employmentlawyernewyork.com)
  2025-03-24 - 2:28:31 PM GMT

- Document emailed to pedrocruzcacao@gmail.com for signature
  2025-03-24 - 2:29:10 PM GMT

- Email viewed by pedrocruzcacao@gmail.com
  2025-03-25 - 10:21:22 AM GMT

- Signer pedrocruzcacao@gmail.com entered name at signing as Pedro A Cruz pena
  2025-03-25 - 10:30:13 AM GMT

- Document e-signed by Pedro A Cruz pena (pedrocruzcacao@gmail.com)
  Signature Date: 2025-03-25 - 10:30:15 AM GMT - Time Source: server

- Agreement completed.
  2025-03-25 - 10:30:15 AM GMT

**Adobe Acrobat Sign**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PEDRO CRUZ-PEÑA, on behalf of himself, individually, and on behalf of all others similarly situated,

    Plaintiff,

-against-

GREAT KITCHEN SUPPORT CORP., and CHRISTIAN DIAZ, individually,

    Defendants.

24 CV 6263 (PKC) (RML)

### DECLARATION OF PEDRO CRUZ-PENA IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, DISCLOSURE OF CONTACT INFORMATION, LEAVE TO DISTRIBUTE NOTICE, AND EQUITABLE TOLLING PURSUANT TO 29 U.S.C. § 216(b)

Pursuant to 28 U.S.C. § 1746, I, Pedro Cruz-Pena, declare under penalty of perjury as follows:

1. I am the named Plaintiff in the above-captioned matter against my former employers, Defendants Great Kitchen Support Corp. and Cristian Diaz, individually (together, where appropriate, as "Defendants").

2. I worked for Defendants – a New York corporation that operates a Brooklyn-based catering company and its Chief Executive Officer who was the day-to-day overseer of the operations and my direct supervisor – as a Cook or Kitchen Assistant from June 2021 until December 2022, at two of Defendants' kitchen, warehouse, and packaging facilities located at 2779 Stillwell Avenue in Brooklyn, New York, and 147 41st Street in Brooklyn, New York.

3. At Cristian Diaz's instruction, I also worked at catering events held by other companies who were associates or clients of Defendants, or held at venues by Defendants' clients,

1

or I went to locations to pick up or drop off other employees working at such locations. These locations included Union Square Events located at 68 35th Street in Brooklyn, New York, and Riviera Caterers located at 2780 Stillwell Avenue in Brooklyn, New York. These events included events hosted by airlines, museums, and other large companies and organizations. There were many other addresses where I worked, or where I delivered food, including 152 41st Street in Brooklyn, New York; Frank's Wine Bar, 465 Court Street in Brooklyn, New York; 6620 Bay Parkway in Brooklyn, New York; 577 4th Avenue in Brooklyn, New York; 5303 4th Avenue in Brooklyn, New York; 508 Canal Street in New York, New York; 597 Marin Blvd. in Jersey City, New Jersey; 634 Pine Hill Road in Chester, New York; and Snug Harbor Cultural Center and Botanical Garden, 1000 Richmond Terrace in Staten Island, New York. In his text messages, Cristian often gave me a name and a phone number of a person to coordinate with at the destination address.

4. I never received any employment contract or offer letter from Defendants, or any other written notice stating my pay. I was paid by check once each week by Cristian Diaz. However, it was not a payroll check, and I never received a wage statement a W-2, or a 1099. No taxes were withheld from my pay, and I never received any health care benefits. Nevertheless, in 2024, the Internal Revenue Service sent me a notification that I owed thousands of dollars in taxes because Defendants suddenly reported non-employee compensation for me for the year 2022.

5. The amounts paid to me each week varied, and I don't know why – the amounts did not correspond to the number of hours I worked. For example, I have checks showing I was paid $1,155 for 77 hours worked in a week, $840 with no notation of hours, $990 for 66 hours, $661 for 44 hours, $657 for 43.8 hours, $762 for 50.8 hours, and so forth. The listed hours did not match what I worked. The checks suggest that the pay was calculated at minimum wage of $15 per hour worked, with no overtime pay for hours over 40 worked in a week. However, that is also

incorrect, because Defendants recorded a smaller number of hours on these checks than the number of hours I actually worked in those weeks. I remember repeatedly noticing that I worked more hours than the total number of hours shown on my check. I complained about this to Cristian Diaz on at least two occasions; he refused to listen or explain or take any action to correct the underpayment; so I eventually gave up on this because I needed the job and did not want to risk angering him and getting fired.

6. I communicated with Cristian Diaz and a couple of other supervisors whose first names were Edward and Enrique by text messages and WhatsApp messages on my phone. Messaging was our sole method of communication. Generally, Cristian told me in his text messages where to go and what hours to work. His text messages also told me what type of uniform to wear, depending on the event scheduled for that day, although Defendants never provided any assistance with purchasing or maintaining uniforms.

7. My main duties included heating up pre-cooked food, chopping vegetables, assembling dishes to be cooked, and packing cooked foods for delivery to customers. When I worked at catered buffet events, I unwrapped the food, placed it out for buffet service, replenished it when needed during the event, and cleaned up after the event. When I worked at catered waiter-service events, I prepared ordered items in the kitchen for the waiters to pick up.

8. I first worked for about half a year out of the Stillwell Avenue kitchen location. At that location, I generally worked six or seven days each week, from 8:00 a.m. until 9:00 p.m. Then, beginning in November 2021, I worked out of the 41st Street and then the 35th Street kitchen locations, where I worked generally seven days each week, from 8:30 a.m. until 7:00 or 8:00 p.m. I usually was able to take a one-half hour break during the work shift.

9. At the Stillwell Avenue location, the supervisors had a notebook where they recorded the hours worked by each employee, and I sometimes signed the book when I arrived to

work and when I left. At the 41st Street and 35th Street locations, Defendants began using an electronic timekeeping system – a tablet where I signed in and out – but the tablet did not work consistently.

10. I personally worked with and observed at least fifteen other non-managerial employees, including: Juan, Gloria, Tito, Laura, El Gordo, Alex, Jorge, Mateo, Patricio, Venansio, Miguel, as well as the opt-in plaintiffs in this case Dianelba Suriel and Amalia Godinez. I don't know the last names of these former coworkers other than the two opt-in plaintiffs.

11. Like me, all of these employees worked both in the kitchens and at events. Although some employees spent more time in the kitchens, and others spebnt more time working at events, our job duties were the same. We spoke of ourselves as Cooks or Kitchen Assistants, but there was no real difference among us.

12. The other employees worked similar schedules and hours as I did, although they had different assignments and reporting locations, as well as start times and end times.

13. I know there were additional employees whose first and last names I do not know, who worked on the same shifts with me, or at different times and locations – I think there were between 25 and 100 employees, but I'm not sure.

14. I also had conversations with several of these individuals about our work, pay, and hours, and they explained to me that they were also paid a varying amount each week that did not correspond to the number of hours they worked, and that did not add up to minimum wage, let alone overtime. They also, like me, received notifications from the Internal Revenue Service in 2024 that Defendants suddenly reported non-employee compensation, and as a result, they owed the IRS thousands of dollars.

15. Many of the employees I worked with spoke, like me, only Spanish.

16.     This Declaration was read to me in Spanish, and I finalized the Declaration with the assistance of a bilingual speaker.

17.     I declare under penalty of perjury that the foregoing is true and correct. Executed in Brooklyn, New York, on this 19 day of February 2025.

*Pedro A cruz peña (Feb 19, 2025 16:40 EST)*
**PEDRO CRUZ-PENA**