UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
PEDRO CRUZ-PEÑA, on behalf of himself,
individually, and on behalf of all others
similarly situated,

                Plaintiff,

     -against-

GREAT KITCHEN SUPPORT CORP., and
CHRISTIAN DIAZ, individually,

                Defendants.
--------------------------------------------------------X

MEMORANDUM
AND ORDER
24 CV 6263 (PKC)(RML)

LEVY, United States Magistrate Judge:

        Plaintiff Pedro Cruz-Pena ("plaintiff") moves for conditional certification of a collective action under 29 U.S.C. § 216(b).  For the reasons explained below, the motion is granted in part and denied in part.[1]

## BACKGROUND

        Plaintiff, on behalf of himself and all others similarly situated, initiated this action on September 6, 2024, alleging that his former employers, defendants Great Kitchen Support Corp. ("Great Kitchen") and Christian Diaz ("Diaz") (together "defendants") unlawfully withheld overtime wages in violation of the Fair Labor Standards Act ("FLSA").  (See Complaint, filed Sept. 6, 2024 ("Compl."), Dkt. No. 1.)[2]  The complaint and declarations filed by

---

[1]  Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action, which is only a "preliminary determination" and not dispositive.  See Gonzalez v. Wicked Taco LLC, 764 F. Supp. 3d 77, 89 n.3 (E.D.N.Y.), reconsideration denied, 772 F. Supp. 3d 284 (E.D.N.Y. 2025) (collecting cases).

[2]  Plaintiff also brings claims under the New York Labor Law and New York Comp. Codes R. & Regs.  (Compl. ¶¶ 59–96.)  However, at this stage it is appropriate only to consider whether
Continued . . .

plaintiff establish the following relevant facts, which are taken as true only for the purposes of this motion.  See Cooke v. Frank Brunckhorst Co., 722 F. Supp. 3d 127, 132 (E.D.N.Y.), on reconsideration in part, 734 F. Supp. 3d 206 (E.D.N.Y. 2024).

Great Kitchen is a New York corporation that operates a Brooklyn-based catering company.  (Compl. ¶¶ 2, 12.)  Diaz is Great Kitchen's Chief Executive Officer.  (Id. ¶ 13).  As "day-to-day overseer" of Great Kitchen and plaintiff's direct supervisor, Diaz made "all significant personnel-related decisions," including setting work schedules and pay rates.  (Declaration of Pedro Cruz-Pena, sworn to Feb. 19, 2025 ("Cruz-Pena Decl."), Dkt. No. 21-1, ¶ 2; Compl. ¶ 31.)  "Diaz also maintained or should have maintained Plaintiff's employment records."  (Compl. ¶ 31.)

Defendants employed plaintiff as a cook or kitchen assistant from approximately June 2021 until December 2022.  (Cruz-Pena Decl. ¶ 2; Compl. ¶ 32.)  Throughout his employment, plaintiff worked "at two of Defendants' kitchen, warehouse and packaging facilities" in Brooklyn and at various other New York and New Jersey locations where defendants catered events.  (Cruz-Pena Decl. ¶¶ 2–3.)  Plaintiff's responsibilities included preparing and packaging food for delivery and staffing Great Kitchen-catered events.  (Id. ¶ 7; Compl. ¶ 32.)

Although plaintiff's schedule varied, he generally worked between 63 and 80.5 hours per week.  (Compl. ¶¶ 36–37.)  In exchange, defendants paid him a weekly salary by check, "in random sums, which varied from week-to-week . . . and which did not correspond in

---

defendants' alleged policies violate the FLSA.  Jun Hua Yang v. Rainbow Nails Salon IV Inc., No. 18 CV 4970, 2019 WL 2166686, at *4 (E.D.N.Y. May 16, 2019); Feng v. Soy Sauce LLC, No. 15 CV 3058, 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016) ("Collective actions under the FLSA encompass only FLSA violations.").

any way to his total hours worked in a week, and that by operation of law, covered only Plaintiff's first forty hours of work in a week." (Id. ¶ 38.) For example, if plaintiff worked "sixty-three or seventy-three and one-half hours each week," defendants paid plaintiff "a salary that changed week to week, with it being $583.00 on the low end or $990.00 on the high end." (Id. ¶ 40.) "This salary covered only Plaintiff's first forty hours of work in a week," and "when divided by Plaintiff's total number of hours worked each week, . . . yielded a regular rate of $7.93 to $13.47[.]" (Id.)

Plaintiff "personally worked with and observed at least fifteen other non-managerial employees" whose job duties were the same as his, and he provides the first names of eleven of them. (Cruz Pena Decl. ¶¶ 10–11.) Two others, Dianelba Suriel and Amalia Godinez, opted in as plaintiffs shortly after the instant action was filed. (Consent to Join Collective Action, dated Sept. 6, 2024, Dkt. No. 5; Consent to Join Collective Action, dated Dec. 16, 2024, Dkt. No. 15.) Plaintiff believes that, during his time of employment, "between 25 and 100" employees worked for defendants in comparable positions to him but with varied schedules and hours. (Cruz Pena Decl. ¶¶ 12–13.) Plaintiff had conversations with "several" of these employees "about [their] work, pay, and hours," during which they "explained to [him] that they were also paid a varying amount each week that did not correspond to the number of hours they worked, and that did not add up to minimum wage, let alone overtime." (Id. ¶ 14.) "Many of the employees [plaintiff] worked with spoke, like [him], only Spanish." (Id. ¶ 15.)

The day plaintiff initiated this action, he and opt-in plaintiff Dianelba Suriel consented to join the collective action. (Consents to Join Collective Action, dated Sept. 6, 2024, Dkt. Nos. 4, 5.) On December 16, 2024, opt-in plaintiff Amalia Godinez filed her consent to join the collective action. (Consent to Join Collective Action, dated Dec. 16, 2024, Dkt. No. 15.) On

December 20, 2024, defendants answered the complaint.  (Answer, filed Dec. 20, 2024, Dkt. No. 16.)  On February 10, 2025, I held an initial conference and approved the parties' case management schedule as proposed.  (Minute Entry, dated Feb. 10, 2025.)

On February 20, 2025, plaintiff filed the instant motion to certify this case as a collective action consisting of "current and former employees, who during the applicable FLSA limitations period of September 6, 2021 through the end of litigation, performed any work for Defendants as non-managerial cooks, or in a similar position, and who give consent to file a claim to recover unpaid overtime compensation and liquidated damages that are legally due to them."  (Motion to Certify FLSA Collective Action, dated Feb. 20, 2025 ("Pl.'s Mot."), Dkt. No. 21, at 1.)  Plaintiff argues that similarly situated employees should be afforded notice of the lawsuit and provided an opportunity to opt-in because plaintiff has met his burden to show that he and potential opt-in plaintiffs together were victims of a common policy or plan that violated the FLSA.  (See Plaintiff's Memorandum in Support of Motion to Certify, dated Feb. 20, 2025 ("Pl.'s Mem."), Dkt. No. 21-7.)

Plaintiff further requests that the court (1) order defendants to produce within fourteen days a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, primary language spoken, and dates of employment of all potential collective action members; (2) approve the proposed notices of the lawsuit and allow for their dissemination by regular mail, email, and text message in English, Spanish, and any other identified primary language of potential opt-in plaintiffs, and permit a sixty-day opt-in period; and (3) toll the statute of limitations for opt-in plaintiffs.  (Pl.'s Mot. at 1–2.)

Defendants filed their opposition to plaintiff's motion on March 6, 2025, arguing that plaintiff has failed to meet his evidentiary burden to show that defendants' employees are similarly situated and were subject to a common policy or plan that violated the FLSA.[3] (Defendants' Memorandum in Opposition, dated Mar. 6, 2025 ("Defs.' Mem."), Dkt. No. 22.) Defendants also object to plaintiff's proposed notices and tolling the statute of limitations. (Id. at 16–18.)

## LEGAL STANDARD

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Carabajo v. APCO Insulation Co. Inc., No. 22 CV 04175, 2023 WL 3931618, at *3 (E.D.N.Y. June 9, 2023) (quoting 29 U.S.C. § 202(a)). The statute requires employers to pay employees an overtime rate for time worked more than forty hours in a given work week of "not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207. "Section 216(b) of the FLSA provides a private right of action to an employee to recover overtime compensation from an employer who violates the Act's provisions." Carabajo, 2023 WL 3931618, at *3.

Under the FLSA, plaintiffs may proceed "for and in behalf of himself or themselves and other employees similarly situated," as a collective action. 29 U.S.C. § 216(b)). "A collective action under the FLSA differs from the typical class action under Rule 23 because

---

[3] Defendants argue, *inter alia*, that plaintiff's declaration is "technically infirm" because plaintiff does not understand English and his declaration was written only in English. (Defendants' Memorandum in Opposition, dated Mar. 6, 2025 ("Defs.' Mem."), Dkt. No. 22, 10–11.) However, plaintiff submitted a Spanish-language version of the declaration, signed by plaintiff, annexed to his reply brief; thus, defendants' technical argument regarding the declaration is moot. (See Spanish Language Translation of Original Declaration, annexed to Plaintiff's Memorandum in Reply, dated Mar. 26, 2025, Dkt. No. 24-1.)

a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation."  Aleman-Valdivia v. Top Dog Plumbing & Heating Corp., No. 20 CV 421, 2021 WL 4502479, at *2 (E.D.N.Y. Sept. 30, 2021) (internal citations omitted).  Unlike Rule 23 class actions, a collective action is "opt in," meaning, to join the suit, a person must "give[ ] his consent in writing to become such a party" and file that consent "in the court in which such action is brought."  Carabajo, 2023 WL 3931618, at *3 (quoting 29 U.S.C. § 216(b)).  See also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013) ("Under the FLSA[,] 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action.  The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]") (internal citations omitted).

        Second Circuit courts apply a two-step test to determine whether to approve a collective action under the FLSA.  Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010).  The first step, termed "conditional certification," at issue here, "involves an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred."  Wilk v. Quality Installations of NY, Inc., 724 F. Supp. 3d 76, 84 (E.D.N.Y. 2024) (quoting Myers, 624 F.3d at 555).  Conditional certification imposes merely a "minimal burden" on the plaintiff and is satisfied by a showing that the purported class members are "similarly situated."  Id. (quoting Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014)).  The analysis requires a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (internal citations omitted).  If a court grants conditional certification to proceed as a collective action, putative collective action members

may "opt in" to the action.  Wilk, 724 F. Supp. 3d at 84.  "The second step of the collective

action occurs on a more complete record where plaintiffs are required to show that the opt-in

plaintiffs are, in fact, similarly situated."  Ding v. Mask Pot Inc., 347 F.R.D. 417, 426 (E.D.N.Y.

2024) (citations omitted).  If the court determines that the opt-in plaintiffs are not in fact

similarly situated, the class is decertified, and the opt-in plaintiffs' claims are dismissed without

prejudice.  Id.

  The instant motion concerns only the first step: whether the proposed opt-in

members are "similarly situated" such that conditional certification should be granted.  Zaldivar

v. JMJ Caterers, Inc., 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016).  To meet his burden, plaintiff

need not show an actual FLSA violation, "but rather only that a factual nexus exists between

[his] situation and the situation of other potential plaintiffs."  Calderon v. King Umberto, Inc.,

892 F.Supp.2d 456, 459 (E.D.N.Y. 2012).

  "Once the conditional certification is approved, district courts may order that

notice be given to potential members of a collective."  Ding, 347 F.R.D. at 427 (citation and

marks omitted).  "Courts have broad discretion to craft appropriate notices that effectuate the

overarching policies of the collective suit provisions [of the FLSA] and provide employees with

accurate and timely notice concerning the pendency of the collective action, so that they can

make informed decisions about whether to participate."  Id.

DISCUSSION

I. Conditional Certification of Collective Action

  Plaintiff has met his minimal burden to establish that the potential opt-in plaintiffs

are similarly situated for the purposes of conditional certification.  Plaintiff asserts that he

worked with other employees "in the [defendants'] kitchens and at events" catered by

defendants.  (Cruz-Pena Decl. ¶ 11.)  Plaintiff further contends that "there was no real difference

7

among [the employees]," although some were "Cooks" and some "Kitchen Assistants."[4]  (Id.)

Plaintiff identifies eleven other employees by first name and estimates that between twenty-five

and 100 additional employees worked for defendants during his same shifts at different locations.

(Id. ¶ 13.)  In conversations with plaintiff, several of these unnamed employees stated that they

were subject to the same policy wherein employees did not receive overtime pay for hours

worked in excess of forty each week.  (Id. ¶ 14.)  Two opt-in plaintiffs have already joined the

case.  (Id. ¶ 10.)  That plaintiff had these "conversations with [his] fellow employees . . .

[discussing] that they and other employees regularly worked in excess of forty hours per week"

is sufficient to establish a factual nexus for conditional certification.  Ding, 347 F.R.D. at 427.

Therefore, plaintiff has shown that these other employees "share a similar issue of law or fact

material to the disposition" of the FLSA claims at issue.  Scott v. Chipotle Mexican Grill, Inc.,

954 F.3d 502, 516 (2d Cir. 2020).

       Defendants object that plaintiff's allegations are insufficient because he relies

solely on his own declaration.  (Defs.' Mem. at 11–14.)  However, courts in this circuit routinely

"authorize [collective certification] based solely on one plaintiff's affidavit."  Ding, 347 F.R.D.

at 428 (citing McPherson v. Look Ent. Ltd., No. 23 CV 04273, 2024 WL 4265844, at *5

(E.D.N.Y. Sept. 23, 2024) (collecting cases)).  See also Zaldivar, 166 F. Supp. 3d at 318

("[C]ourts have routinely found that the allegations in the pleadings and the personal

---

[4]  "It is well established that prospective class members need not have the exact same duties, titles, or jobs to be similarly situated for the purposes of conditional certification of a class." Ding, 347 F.R.D. at 428 (citing Cabrera v. Stephens, No. 16 CV 3234, 2017 WL 4326511, at *5 (E.D.N.Y. Sept. 28, 2017)).  See also Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 520–21 (2d Cir. 2020) (noting that "disparities in job duties" do not preclude employees from being similarly situated for collective certification purposes).  Thus, while defendants do not argue the point, the distinction between cooks and kitchen assistants (or kitchen helpers) does not preclude a finding that such employees are similarly situated.

observations of one plaintiff's affidavit are sufficient to make the modest factual showing necessary to conditionally certify a class."); Wraga v. Marble Lite, Inc., No. 05 CV 5038, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006) (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately eighteen other employees who were subject to the same policies).

Defendants also argue that plaintiff's allegations are conclusory and that consequently he cannot meet his burden to establish that potential opt-in collective action members are similarly situated. (Defs.' Mem. at 11–14.) This argument also lacks merit. Since plaintiff's principal allegation is that defendants did not compensate him and other employees for hours worked, "[i]t would be highly unusual for a defendant who did require its employees to work off the clock to keep records of that time." Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 83 (E.D.N.Y. 2008). In Bowens, a lone plaintiff "provided little, if any, documentary support for his allegations" that his employer violated the FLSA with respect to other employees, but the court still found that the plaintiff met his burden for collective certification. Id. Here too, defendants cannot use plaintiff's lack of documentary evidence against him because, at the first step, plaintiff is not "required to buttress his motion with affidavits besides his own or with other documentary evidence." Mata v. Foodbridge LLC, No. 14 CV 8754, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015). Thus, defendants' contention that plaintiff's failure to provide documentary evidence should preclude collective certification is inapposite.

Finally, defendants argue that plaintiff's allegations do not violate the FLSA. (Defs.' Mem. at 14–16.) Defendants claim that they maintained a "company-wide policy of requiring their employees to sign-in, and sign-out, at the beginning and the end of their work

schedules." (Id. at 15–16.) Defendants allege that plaintiff's failure to "adhere to this policy" prevented defendants from knowing plaintiff's actual hours worked. (Id. at 15.) Defendants thus argue that they lacked "actual or constructive knowledge" of plaintiff's hours worked, which they claim is necessary to establish liability for unpaid wages under the FLSA. (Id.) This argument, too, is unavailing. At this stage, "[t]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." Cooke, 722 F. Supp. 3d at 136 (quoting Romero v. La Revise Assocs., LLC, 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013)). Therefore, the court does not consider defendants' substantive claims with respect to the alleged FLSA violations.

Based on the foregoing analysis, plaintiff has satisfied his minimal burden to show that he is "similarly situated" to other members of the proposed collective. Ding, 347 F.R.D. at 428. The court, therefore, conditionally certifies this case as an FLSA collective action consisting of current and former employees of Great Kitchen who performed work for defendants as non-managerial cooks, or in a similar position, during the time period discussed below.

II.    Discovery of Identifying Information

Plaintiff requests that the court order defendants to produce a computer-readable data file containing the names, last known mailing addresses, last known home and mobile telephone numbers, email addresses, primary language spoken and dates of employment of all potential opt-in plaintiffs. (Pl.'s Mot at 1; Pl.'s Mem. at 20.) Defendants object that plaintiff's request is too broad and that only potential collective action members' mailing addresses need be disclosed. (Defs.' Mem. at 17–18.)

"[I]t is proper for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment for potential collective members." Singh v. Anmol Food Mart, Inc., No. 22 CV 5475, 2024 WL 308241, at *4 (quoting Finnigan v. Metro. Transp. Auth., No. 19 CV 516, 2020 WL 1493597, at *4 (E.D.N.Y. Mar. 26, 2020)); see also Heras v. Metro. Learning Inst., No. 19 CV 2694, 2021 WL 8650861, at *7 (E.D.N.Y. Sept. 28, 2021) (ordering production of, in electronic form, names, addresses, phone numbers, and primary language spoken); Velasquez v. Digital Page, Inc., No. CV 11 3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (ordering production of, in electronic form, names, addresses, telephone numbers, email addresses, and dates of employment); Puglisi, 998 F. Supp. 2d at 102 (ordering production of, in electronic form, names, last known mailing addresses, and telephone numbers). To facilitate successful notification, courts have also granted requests to disclose potential opt-in collective action members' primary language. See, e.g., McPherson, 2024 WL 4265844, at *8 (ordering production of primary language if other than English); Heras, 2021 WL 8650861, at *7 (ordering production of primary language spoken and written for all potential opt-in plaintiffs); Portilla v. Bridgehampton Stone, Inc., No. 17 CV 2549, 2019 WL 1128364, at *4, 9 (E.D.N.Y. Mar. 12, 2019) (ordering production of primary language spoken for all potential opt-in plaintiffs where employees "spoke Spanish as their primary language"). Furthermore, courts in this district regularly permit expedited discovery requests for production of contact information in computer-readable data files within fourteen days. See, e.g., Wilk, 724 F. Supp. 3d at 91 (E.D.N.Y. 2024) (finding fourteen-day expedited discovery request reasonable); McPherson, 2024 WL 4265844, at *8 (same); Portilla, 2019 WL 1128364, at *9 (same).

Here, plaintiff requests a computer-readable file with "names, last known mailing addresses, all last known home and mobile telephone numbers, all known email addresses, primary language spoken, and dates of employment of all potential collective action members." (Pl.'s Mot at 1.)  Plaintiff avows that many of the employees working for defendants spoke only Spanish.  (Cruz-Pena Decl. ¶ 15.)  Defendants do not specifically oppose the request for information on primary language spoken and instead focus on limiting the production to mailing addresses only.  (Defs.' Mem. at 17.)  Seeking the requested information in a computer-readable file pursuant to a fourteen-day deadline "is not an unusual request and indeed courts in this Circuit have routinely granted such requests in the FLSA conditional collective certification stage."  McPherson, 2024 WL 4265844, at *8 (collecting cases).  The court, therefore, grants plaintiff's expedited discovery request in full.

III.    Court-Authorized Notice

Plaintiff also asks to disseminate a court-authorized notice of this lawsuit, with a sixty-day opt-in period beginning from the date the original notice is sent, to the collective via mail, text message, and email in "English, Spanish, and any other identified primary language." (Pl.'s Mot at 2; see Notice of Lawsuit ("Notice"), attached as Ex. A to Pl.'s Mem., Dkt. No. 21-3; Proposed Text Message Notice of Lawsuit ("Text"), attached as Ex. C to Pl.'s Mem., Dkt. No. 21-5; Proposed Email Notice of Lawsuit ("Email"), attached as Ex. D to Pl.'s Mem., Dkt. No. 21-6.)  Additionally, plaintiff asks to send a "reminder notice[] . . . thirty days after the original mailing" via mail, text message, and email.  (Pl.'s Mem. at 22–23; see Reminder of Notice of Lawsuit ("Reminder"), attached as Ex. B to Pl.'s Mem., Dkt. No. 21-4.)  Finally, plaintiff asks to use his counsel's website to host the Notice on a webpage—as a supplement to the physical copy

sent via mail—and to send a link to this webpage in the Text and the text message version of the Reminder.  (Pl.'s Mem. at 22–23.)

Defendants object that the Notice "is deficient" because it "fails to inform potential plaintiffs that they may be obligated to participate in discovery" and does not "identify and provide contact information for defense counsel."  (Defs.' Mem. at 16–17.)

A.    Legal Standard

"The form and substance of the proposed court-authorized notice are left to the broad discretion of the district court."  Aleman-Valdivia, 2021 WL 4502479, at *8.  Courts generally require that notices include a description of some or all of the following:  (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.  Id. (marks and citation omitted).

B.    Content of the Notice of Lawsuit

The Notice begins by identifying plaintiff and opt-in plaintiffs Suriel and Godinez, the nature of their claims, and a statement regarding the defendants' denial of any wrongdoing.  (Notice at 2.)  It then lists the legal rights and options for potential opt-in plaintiffs followed by ten questions and corresponding answers covering, inter alia, the nature of the lawsuit and why the intended recipient is receiving it.  (Id. at 3–5.)  The Notice also states that the court has not taken a position with respect to the merits of the case.  (Id. at 2.)  Accordingly, plaintiff has satisfied all the requirements for such notices listed above.

13

Defendants object to the content of the Notice on two grounds.  First, defendants claim that the Notice does not adequately inform potential opt-in plaintiffs "that they may be obligated to participate in discovery."  (Defs.' Mem. at 16.)  Plaintiff, however, points out that this concern is addressed in "question 6" of the Notice.  (See Notice at 4; Plaintiff's Memorandum in Reply, dated Mar. 26, 2025 ("Reply"), Dkt. No. 24, at 10.)  The court agrees. No amendment is needed because, as required, plaintiff's proposed notice already contains "a neutral and non-technical reference to discovery obligations."  Aleman-Valdivia, 2021 WL 4502479, at *8.

Second, defendants argue that the proposed notice is "deficient" because it does not "identify and provide contact information for defense counsel."  (Defs.' Mem. at 17.)  The Second Circuit has not settled on whether defense counsel's contact information must be included in notices.  See Valdez v. MichPat & Fam, LLC, No. 20 CV 2570, 2022 WL 950450, at *14 (E.D.N.Y. Mar. 30, 2022) (explaining the split in decisions to require defense counsel's contact information in such notices and summarizing the competing arguments).  But, "including defense counsel's contact information without additional instruction—like an explicit warning not to contact defense counsel if an individual decides to join the lawsuit as a plaintiff—would create confusion and render the notice less effective."  Id. at *15.  Therefore, the court orders plaintiff to amend the proposed notice by adding the contact information for defendants' counsel with the following, emphasized and/or bolded language: "If you decide to join this case, you should not contact defense counsel, but instead rely on Plaintiff's counsel or your own counsel to contact defense counsel."  Gonzalez v. Wicked Taco LLC, 764 F. Supp. 3d 77, 106 (E.D.N.Y.), reconsideration denied, 772 F. Supp. 3d 284 (E.D.N.Y. 2025) (citing Hunter v. Next Level Burger Co., No. 23 CV 3483, 2024 WL 686929, at *3 (E.D.N.Y. Feb. 20, 2024)).

Finally, plaintiff requests that the notice and the proposed reminder be sent "in English, Spanish, and any other identified primary language." (Pl.'s Mot. at 2.) Defendants do not contest this request. "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" Ni v. Red Tiger Dumpling House Inc, No. 19 CV 3269, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020) (quoting Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 76 (E.D.N.Y. 2016)); see also Singh, 2024 WL 308241, at *4 (permitting dissemination of notice "in English and Hindi via mail, email, and text message"). Accordingly, the Notice and the reminder messages, as amended, may be sent in English, Spanish, or any primary language identified in the disclosed contact information.

C.    Methods of Dissemination

Plaintiff asks to send the Notice "by regular mail, email, and text message." (Pl.'s Mot. at 2), and to "send reminder notices to the potential opt-in plaintiffs thirty days after the original mailing." (Pl.'s Mem. at 21.) The Reminder would be sent via mail, text message, and email as well. (Id. at 22; see Reminder at 2.) Plaintiff asks that the Email contain an attachment of the Notice and that the Text link to a webpage of the Notice hosted on plaintiff's counsel's website. (Pl.'s Mem. at 23.) Plaintiff cites the fact that defendants "regularly communicate" with employees via "their personal cellular phones, often by text message and email," as cause to permit notification to potential collective action members by such means. (Id. at 22.) Defendants do not specifically oppose any of these requests.

"[D]issemination of notices via mail, email, and text are appropriate." McPherson, 2024 WL 4265844, at *9. Because "[p]ractical requests . . . reasonably further the purpose of notice of a collective action under the FLSA," courts should not unduly deny requests to use "electronic means" to facilitate notice to potential collective action members. Cabrera v.

Stephens, No. 16 CV 3234, 2017 WL 4326511, at *8 (E.D.N.Y Sep. 28, 2017). However, hosting such notice on plaintiff's "counsel's website presents a substantial risk that opt-in plaintiffs may rely solely on Plaintiffs' counsel, rather than exercising their right to retain their own attorneys." Ding, 347 F.R.D. at 432; see also Hong v. Haiku @ WP Inc., 582 F. Supp. 3d 117, 135 (S.D.N.Y 2022) (denying plaintiff's request to post notice on their counsel's website where other means of reaching potential plaintiffs were deemed sufficient). In addition, defendants may be prejudiced when notice is posted on a plaintiff's counsel's website. Qian Xiong Lin v. DJ's Int'l Buffet Inc., No. 17 CV 4994, 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (citing Mark v. Gawker Media LLC, No. 13 CV 4347, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014)).

Plaintiff's request to host the notice on his counsel's website, and to link to this webpage in the Text and the text message version of the Reminder, is denied "because [p]laintiff has not provided any justification to deviate from the traditional methods" of notifying potential opt-in collective action members. Chui v. Am. Yuexianggui of LI LLC, No. 18 CV 5091, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020). However, the court grants plaintiff's request to send the original and reminder notices via text message and email in addition to regular mail "[b]ecause the request . . . is reasonable and [] [d]efendants have not opposed such [means of dissemination]." Portilla, 2019 WL 1128364, at *10. Plaintiff is directed to amend the Text and the text message version of the Reminder to include the Notice as an attachment. Plaintiff may not host the Notice as a webpage on plaintiff's counsel's website.

D.    Opt-In Period and Reminder Notice

"[A] 60-day notice period for potential plaintiffs is common practice under the FLSA." Heras, 2021 WL 8650861, at *7 (quoting Castillo v. Perfume Worldwide Inc., No. 17

CV 2972, 2018 WL 1581975, at *11 (E.D.N.Y. Mar. 30, 2018)).  Reminder notices are appropriate to further the remedial purposes of the FLSA by helping to "[notify] all potential opt-in plaintiffs of the pendency of the action."  Aleman-Valdivia, 2021 WL 4502479, at *9; see also Ding, 347 F.R.D. at 436–37 (permitting a reminder notice to alert potential opt-in plaintiffs of the lawsuit and reiterate how to join it).

Here, plaintiff proposes a sixty-day opt-in period for potential collective action members that commences upon sending the original notice.  (See Pl.'s Mot. at 2; Pl.'s Mem. at 21.)  Plaintiff also seeks to send reminder notices thirty days after the original notice to "any potential collective members who have not yet joined the case."  (Pl.'s Mem. at 21.)  Defendants do not specifically oppose the sixty-day opt-in period nor the method or content of the proposed reminder notices.  Still, reminder notices need not "reiterate every provision of the Notice of Lawsuit" but "should be crafted to avoid misleading potential opt-in plaintiffs or presenting a one-sided view of the litigation."  Ding, 347 F.R.D. at 436.  It follows that reminder notices must restate that potential "opt-in plaintiffs may retain their own counsel and that the Court does not encourage or discourage participation in the collective action."  Id. at 437.  Therefore, plaintiff must amend all versions of the Reminder—mail, text message, and email—to reiterate "opt-in plaintiffs['] . . . discovery and preservation obligations" and "[d]efendants' view of the case."  Aleman-Valdivia, 2021 WL 4502479, at *9.  The court otherwise grants the sixty-day opt-in period and reminder notices, as proposed.

IV.    Notice Period

Plaintiff requests that the notice period date back three years from the filing of the complaint in this case.  (Pl.'s Mem. at 19.)  According to plaintiff, "a three-year look-back period for conditional certification and notices is appropriate" where the plaintiff alleges willfulness by

the employer with respect to violations of the FLSA.  (Reply at 10.)  Defendants do not directly

contest the request for a three-year look-back period but ask the court to "limit the look back

period to three (3) years from the date of the Court's order approving notice," as opposed to the

date the complaint was filed.  (Defs.' Mem at 16.)

    "The limitations period for FLSA claims is two years, 'except that a cause of

action arising out of a willful violation may be commenced within three years.'"  Whiteside v

Hover-Davis, Inc., 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)).  "Where

willfulness is disputed, the court applies the three-year statute of limitations for purposes of

certifying a representative action."  Ding, 347 F.R.D. at 429 (quoting Wilson v. Jamaica Serv.

Program for Older Adults, Inc., No. 21 CV 1263, 2021 WL 4750098, at *4 (E.D.N.Y. Oct. 12,

2021)).  Courts have ruled that the notice period should date back three years from the filing of

the complaint, not from the date of an order granting collective certification.  See, e.g., Ding, 347

F.R.D. at 430 ("[T]he notice period should commence on the date of the filing of the

Complaint"); Wilk, 724 F. Supp. 3d at 90 ("The [notice period] should commence from the date

of the filing of the Complaint looking backwards and not the date of this Court's order"); Cinar

v. R&G Brenner Income Tax LLC, No. 20 CV 1362, 2021 WL 7366924, at *12 (E.D.N.Y Sept.

29, 2021) (ordering the notice period to commence from "the date of the filing of the

Complaint").

    Here, there is at least a cognizable dispute as to the applicable limitations period

because defendants reference a two-year statute of limitations period, while plaintiff argues that

he has alleged the type of willfulness by defendants required for a three-year limitations period.

(See Defs.' Mem at 6 n.2; Reply at 10.)  Though defendants do not explicitly argue this point, the

result is certain: "[p]laintiff[] [has] proffered facts sufficient to support an inference of

willfulness." <u>Ding</u>, 347 F.R.D. at 429 (quoting <u>Garriga v. Blonder Builders. Inc.</u>, No. 17 CV 0497, 2018 WL 4861394, at *6 (E.D.N.Y. Sept. 28, 2018)).  In addition, the notice period should date from the filing of the complaint because potential opt-in collective action members should not be harmed by the necessary lapse of time for motion practice and this court's review.  <u>See</u> <u>id.</u> at 430.

  V. <u>Equitable Tolling of the Statute of Limitations</u>

    The court also considers plaintiff's request to equitably toll the statute of limitations for potential collective action members "from the date of filing of this motion until such time as the Court resolves this motion."  (Pl.'s Mem. at 23.)  Defendants ask the court to deny equitable tolling, which they claim is only available for exceptional cases.  (Defs.' Mem. at 16.)

    For an FLSA action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." <u>Ding</u>, 347 F.R.D. at 430 (quoting <u>Garriga</u>, 2018 WL 4861394, at *10).  "[E]quitable tolling [of the statute of limitations] is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."  <u>Singh</u>, 2024 WL 308241, at *3 (quoting <u>Zerilli-Edelglass v. N.Y.C. Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003), <u>as amended</u> (July 29, 2003)).  However, "[c]ourts in this Circuit have permitted equitable tolling while the motion for conditional certification is before the court."  <u>Aleman-Valdivia</u>, 2021 WL 4502479 at *7 (quoting <u>Fa Ting Wang v. Empire State Auto Corp.</u>, No. 14 CV 1491, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015)); <u>see also</u> <u>Chui</u>, 2020 WL 3618892, at *10 ("Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion

19

was filed."). Here, plaintiff filed the instant motion over four months ago. (See Pl.'s Mot.) Accordingly, the court grants equitable tolling of the statute of limitations through to the date of this order because potential collective action members "should [] not be penalized due to the courts' heavy dockets and understandable delays in rulings." McGlone v. Contr. Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

## CONCLUSION

For the reasons set forth above, plaintiff's motion for conditional certification is GRANTED in part and DENIED in part as follows:

(1) Plaintiff has met his minimal burden of showing that the potential opt-in plaintiffs are similarly situated for the purposes of conditional certification. The collective includes all nonexempt and non-managerial current and former employees, inclusive of but not limited to all cooks and kitchen assistants/helpers of Great Kitchen Support Corp. who performed work at 2779 Stillwell Avenue, Brooklyn, New York 11232 and/or 147 41st Street, Brooklyn, New York 11232 between September 6, 2021 and the present;

(2) Within fourteen days of this order, defendants shall produce a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, primary language spoken, and dates of employment of all potential opt-in plaintiffs;

(3) Plaintiff's proposed notice and consent form is conditionally approved subject to the amendments directed by this order;

(4) Plaintiff shall disseminate the notice via mail, email, and text message within fourteen days of this court's final approval of the amended notices. However, plaintiff may not host the notice and consent form as a webpage on his counsel's website. Plaintiff may translate the notices and consent form into any primary language other than English identified through the discovery request;

(5) A sixty-day opt-in period is granted. Furthermore, plaintiff may send reminder notices after thirty days to potential opt-in plaintiffs who have not already opted in. Plaintiff shall amend such reminder notices per this order within fourteen days for this court's final approval;

(6) The applicable statute of limitations shall be three years for alleged willful violations of the FLSA and shall date back from the filing of the complaint, which results in a notice period dating back to September 6, 2021; and

(7) The FLSA statute of limitations for opt-in plaintiffs shall be tolled from February 20, 2025, the date plaintiff's motion for conditional certification was filed, until the date of this order.

Plaintiff shall revise the Notices in accordance with this order and serve a draft on defendants by August 11, 2025. Defendants must serve their objections on, or give their consent to, plaintiff by August 18, 2025. The parties shall file the final revised Notices as a joint motion for approval by August 25, 2025.

SO ORDERED.

_____
/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
July 28, 2025

21